## Case No. 4,158.

In re DUNKERSON et. al.

[4 Biss. 277.][1]

District Court, D. Indiana. Jan., 1869.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[For prior proceedings, see Cases Nos. 4,156 and 4,157.]

Asa Iglehart, for the bank.

McDONALD, District Judge. In this case, Charles H. Butterfield, Esq., one of the registers in bankruptcy, has certified certain facts for my decision. He certifies:

"That there are two cases pending in this court in which the question is involved, namely, the case of R. K. Dunkerson, Alexander Wilson, and Enoch Schoenlaub—formerly partners as R. K. Dunkerson & Co.—and the case of R. K. Dunkerson. The schedules in the former case set forth the individual liabilities and assets of the said partners, and also the partnership liabilities and assets. The schedules in the latter case set forth the individual liability and assets of Dunkerson, and also his liabilities and assets as a member of the firm of Given, Brown & Co., of which last-mentioned firm said Dunkerson was a member at the time of the filing of his petition for adjudication of bankruptcy.

"The Bank of Kentucky, one of the creditors of R. K. Dunkerson & Co., holds certain drafts, in all amounting to ten thousand dollars, drawn by Given, Brown & Co. (of which firm said Dunkerson at the time of the drawing of said drafts was a member) on R. K. Dunkerson & Co., and by said last-mentioned firm accepted. The Bank of Kentucky has proven the said amount of ten thousand dollars, in due form before the register in bankruptcy in Louisville, Kentucky, against the firm of R. K. Dunkerson & Co., and also against said R. K. Dunkerson—or, in other words, has proven their said claim in both the cases mentioned in the first part of this certificate. And the said Bank of Kentucky now claims that the individual assets of R. K. Dunkerson, which are largely in excess of the claims against him individually, shall be applied so far as they will go to the satisfaction of the claims of the said Bank of Kentucky; and that, for any balance which may be found due said bank, after applying said Dunkerson's individual assets as aforesaid, the said bank shall be allowed to share, pro rata, with the general creditors of R. K. Dunkerson and to which the First National Bank of Evansville—also a creditor of the bankrupts in all said cases—objects, and insists that the said Bank of Kentucky shall only share pro rata with the general creditors of R. K. Dunkerson & Co.;

and that the individual assets of R. K. Dunkerson, after paying his individual debts, be applied to the payment—so far as they will go—of the claims of all the general creditors of the said firm of R. K. Dunkerson & Co. The firm of Given, Brown & Co. have filed a petition for adjudication of bankruptcy in the United States district court for the district of Indiana, upon which adjudication has been made, and an assignee appointed."

The question to be decided is simply this: Under the circumstances above stated, shall the Bank of Kentucky occupy the same ground in the distribution of assets as all the other creditors of the firm of R. K. Dunkerson & Co., or has the bank a right first to take a dividend out of the individual assets of R. K. Dunkerson & Co., and then for the residue of its debt to share equally with other creditors of Dunkerson & Co. in the joint assets of that firm?

"Equity loves equality." A leading object of the bankrupt law is to make all creditors of a bankrupt share equally. And this obvious and just policy of the law must be followed in every case in which there is no special reason for an exception to the general rule. Does the present case embrace any such exceptions? The drafts in question were drawn by Given, Brown & Co. on R. K. Dunkerson & Co., and by the latter accepted. Does the fact that Dunkerson is a partner in both these companies give the Bank of Kentucky any special claim on Dunkerson's separate assets superior to the claims of other creditors of Dunkerson & Co.? I cannot think so. It is probable, indeed, that the bank will necessarily have some advantage over other creditors of the last-named company; for, as both the companies are in bankruptcy, the bank may, after taking its dividend in the assets of Dunkerson & Co., receive a dividend from the assets of Given, Brown & Co. But this advantage would arise from the fact that both these companies are indebted, as drawers and acceptors, to the bank on the same bills. To give the bank the additional advantage which it asks, would be more than it deserves.

If Dunkerson had individually indorsed these drafts, or in any way incurred a separate individual liability on them, the preference claimed by the bank might perhaps be allowed. At least it is so held under the English bankrupt law. But it is much doubted whether, even in that case, such preferences would be given in the United States. See Mead v. National Bank of Fayetteville [Case No. 9,366]; In re Farnum [Case No. 4,674].

I decide that the Bank of Kentucky must first take its pro rata dividend out of the assets of Dunkerson & Co., equally with the other creditors of that firm, and must afterwards share equally with them in the individual assets of Dunkerson, if any remain after fully satisfying his individual creditors.

[For prior proceedings, see Cases Nos. 4,-156–4,158.]